UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Raoul Marradi, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-10038-LTS |
| K&W Realty Investment LLC, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. 7)

September 15, 2016

SOROKIN, J.

For the reasons that follow, Defendant K&W Realty Investment LLC's Motion to Dismiss Plaintiff Raoul Marradi's Complaint is DENIED.

I.      BACKGROUND

On January 11, 2016, Plaintiff filed a Complaint against Defendant. Doc. 1. Plaintiff, who is disabled and refers to himself as a "tester," claims that Defendant has discriminated against him by owning property that is inaccessible to him, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*[1] Doc. 1. Plaintiff seeks injunctive relief. Id. at 1. Defendant's property is located at 684 Washington Street ("the

---

[1] Title III "authorizes the award of injunctive relief to any person who is being subjected to discrimination on the basis of disability." Steir v. Girl Scouts of the USA, 383 F.3d 7, 11 n.1 (1st Cir. 2004) (citation and internal quotation marks omitted).

1

Premises"), and presently houses a business called My Thai Vegan Café/Bubble Tea Bistro ("My Thai Café"). Id. at 2-3.

On March 22, 2016, Defendant filed a Motion to Dismiss. Doc. 7. Defendant argues the Complaint should be dismissed for three reasons: (1) Plaintiff lacks standing to sue; (2) the Complaint fails to state a claim; and (3) Plaintiff has failed to name My Thai Café, an "indispensable party," as a defendant. Doc. 8.

On March 30, 2016, Plaintiff filed a Response to the Motion to Dismiss. Doc. 9. On July 27, 2016, Plaintiff also filed a Notice of Supplemental Authorities, alerting the Court that another Judge in this District had recently denied Defendant's motion to dismiss a *different* case of Plaintiff's, alleging ADA violations at 682 Washington Street. Doc. 10 (discussing Marradi v. K&W Realty Inv. LLC, __ F.3d __, 2016 WL 3976580 (D. Mass. July 22, 2016) (Gorton, J.)).

II.   DISCUSSION

   A.   Motion to Dismiss for Lack of Standing

Defendant argues that Plaintiff lacks standing to sue. Doc. 8 at 4. To invoke federal jurisdiction, a plaintiff bears the "burden of establishing standing," by showing "(1) an injury-in-fact; (2) causation; and (3) redressability." Steir, 383 F.3d at 15 (citations omitted). Recently, the First Circuit held that the same pleading standard necessary to state a claim to relief, following the Supreme Court's ruling in Ashcroft v. Iqbal, 556 U.S. 662 (2009), is also required to establish standing. Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). Consequently, just as a complaint must, after Iqbal, contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," 556 U.S. at 678, it must contain "sufficient factual matter to plausibly demonstrate . . . standing to bring the action."

Hochendoner, 823 F.3d at 731.  "Neither conclusory assertions nor unfounded speculation can supply the necessary heft."  Id. (citations omitted).

More specifically, to establish standing in a Title III case, "a plaintiff generally must show a real and immediate threat that a particular (illegal) barrier will cause future harm." Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005) (citation and internal quotation marks omitted).  A "disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."  Id. (citation and internal quotation marks omitted).  A person with a disability need not "engage in a futile gesture if such person has actual notice that [an entity] covered by [Title III] does not intend to comply with its provisions."  Id. at 65 n.7 (citation and internal quotation marks omitted).

According to the Complaint, Plaintiff visited the Premises "for personal reasons[] and also as a 'tester,'" and encountered "illegal barriers to access[ing]" the Premises.  Doc. 1 at 2. Plaintiff states he "intends to visit the [Premises] again in the near future in order to utilize all of the goods" and services offered there, but that he "will be unable to do so" due to the barriers. Id. at 4-5.  Defendant argues that these pleadings are insufficient, and Plaintiff has not "demonstrate[d] a real intent to return" to the Premises.  Doc. 8 at 8.  More specifically, Defendant argues that Plaintiff's allegations of intent to return are "generalized and formulaic," and are undermined by Plaintiff's status as a "tester" as well as by the fact that "Plaintiff has filed eighteen (18) substantially identical ADA Complaints in the past year."[2]  Id. at 6, 8.  If

---

[2] Per Defendant's request, the Court takes judicial notice that Plaintiff has filed multiple other ADA cases, as that fact is not disputed by Plaintiff and is "'capable of accurate and ready determination by resort to sources whose

Defendant is correct that Plaintiff has not demonstrated an actual intent to return to the Premises, then Plaintiff has not shown "a real and immediate threat that" Defendant's non-compliance with the ADA "will cause future harm" to him, and thus has not shown standing to sue under Title III. Disabled Americans, 405 F.3d at 64.

The Court finds Plaintiff has sufficiently pleaded that he intends to return to the Premises and, thus, that he has standing. In deciding the instant Motion, the Court must accept the Complaint's "factual allegations as true and draw all reasonable inferences from those facts in favor of" Plaintiff. Saldivar v. Racine, 818 F.3d 14, 16 (1st Cir. 2016) (citation omitted). In Disabled Americans, the First Circuit found allegations by an ADA plaintiff that were nearly identical to the allegations in this case sufficient to show an intent to return to the defendant's place of business. Compare 405 F.3d at 64-65 (finding sufficient plaintiff's statement that he "intends to return to the [cruise company] Defendant's place of public accommodation and cruise vessel to avail himself of the goods and services offered therein") with Doc. 1 at 4-5 (stating that Plaintiff "intends to visit the [Premises] again in the near future in order to utilize all of the goods" and services offered there, but that he "will be unable to do so" due to access barriers). Thus, under Disabled Americans, the pleadings in the instant Complaint are sufficient to confer standing.[3]

---

accuracy cannot reasonably be questioned,'" in this instance the Court's own ECF system. Invest Almaz v. Temple-Inland Forest Products Corp., 243 F.3d 57, 69 (1st Cir. 2001) (quoting Fed. R. Evid. 201(b)).

[3] The Court notes that Disabled Americans was decided in 2005, before the Supreme Court, in Iqbal, heightened the pleading standard to state a claim to relief, and before the First Circuit, in Hochendoner, held that Iqbal's heightened pleading standard applies to claims of standing. It is possible that, post-Hochendoner, the First Circuit would require more details than it required in Disabled Americans to establish a plaintiff's intent to return to a defendant's public accommodation. However, at least in this instance, the Court does not find additional details are necessary to find it plausible that Plaintiff intends to visit Defendant's property again, given Plaintiff's status as a "tester" and his professed desire, which the Court must accept as true, to return to the business at Defendant's property to avail himself of its goods and services. Doc. 1 at 2-5; see also infra (addressing Defendant's counterarguments).

Defendant suggests that Plaintiff should have to specify when in the "near future" he intends to visit the Premises again. Doc. 8 at 6. Defendant notes, according to the Supreme Court, a plaintiff's mere profession of an intent to return "some day" to a place that will allegedly be damaged, without "any specification of *when* the some day will be," does not "support a finding of the 'actual or imminent' injury" necessary to confer standing under the Constitution. Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 565 (1992) (internal quotation marks omitted)). However, the Supreme Court has distinguished that statement in Lujan, finding that a "conditional statement[]" that a plaintiff "*would* visit a place but for *ongoing* violations . . . cannot be equated with the speculative 'some day' intentions that were insufficient" to show standing in Lujan. Scherr v. Marriott Intern., Inc., 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 184 (2000)) (emphases added; internal quotation marks omitted). Here, Plaintiff effectively offers such a conditional statement: he would visit the Premises but for ongoing ADA violations that bar him from access. Thus, Plaintiff's failure to specify the date he intends to return to the Premises is not fatal to standing. Indeed, specifying the date would constitute a "futile gesture," which Plaintiff need not "engage in," if Plaintiff has no reason to think that the allegedly illegal barriers to access will be removed by then. Disabled Americans, 405 F.3d at 65 n.7.

The Court also rejects Defendant's argument that Plaintiff's status as a tester and his other recent ADA lawsuits militate against a finding that he intends to return to the Premises. As Judge Gorton recently stated, "[a] plaintiff's self-identified status as a 'tester' may even make him more likely to return to a place of public accommodation, if only to ensure compliance with the ADA." Marradi, 2016 WL 3976580, at *4 (citing Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 193 (D. Mass. 2013) (Young, J.)). In addition, Plaintiff has recently filed about 18

5

ADA complaints, which is not "such an unreasonably large number of lawsuits that it is implausible that he intends in the future to return to the establishment at issue in this case." Id. In the alternative, even assuming Plaintiff's status as a "tester" undermines the allegation that he intends to return to the Premises, Plaintiff asserts that he visited the Premises "for personal reasons" as well, and that he intends to visit again. Doc. 1 at 2. Those assertions, which the Court must accept as true, are sufficient to show Plaintiff intends to return to the Premises and, thus, has standing to sue.

      B.      <u>Motion to Dismiss for Failure to State a Claim</u>

Defendant argues that Plaintiff has failed to state a claim to relief under Title III of the ADA. Doc. 8 at 8. To survive a motion to dismiss, a complaint "must provide fair notice to the defendants" and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bruns v. Mayhew, 750 F.3d 61, 71 (1st Cir. 2014) (citation and internal quotation marks omitted); Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted); see also id. at 679 (noting that a complaint must "permit the court to infer more than the mere possibility of misconduct") (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted). "Although for purposes of a motion to dismiss [a court] must take all of the factual allegations as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation and internal quotation marks omitted). A plaintiff "armed with nothing more than conclusions" may "not unlock the doors of discovery." Id. at 678-79. "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

The elements of a claim under Title III are:  (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA.  Marradi, 2016 WL 3976580, at *4-5.  The third element requires showing that the removal of any allegedly illegal barriers on Defendant's property is "readily achievable," i.e., is "easily accomplishable and able to be carried out without much difficulty or expense." Id. at *5 (citations and internal quotation marks omitted).

The Complaint alleges that there are at least 16 illegal barriers to access on Defendant's property and states, without any supporting factual allegations, that their removal is "readily achievable and can be accomplished and carried out without much difficulty or expense."  Doc. 1 at 5-6.  Defendant argues that Plaintiff has insufficiently alleged that the removal of barriers on Defendant's property is readily achievable – i.e., is easily accomplishable and able to be carried out without much difficulty or expense – and, thus, that Defendant has discriminated against Plaintiff.  Doc. 8 at 10-11.

Courts have disagreed about the amount of detail that should be required in an ADA complaint with respect to whether the removal of allegedly illegal barriers on a defendant's property is readily achievable.  Compare Hoewischer v. Park Shopping, Ltd., 2011 WL 4837259, at *4 (M.D. Fla. 2011) (holding that, under Iqbal, "[m]ere recitation of the statutory definition of 'readily achievable' is not sufficient to plead that the removal of the challenged barriers is, in fact, 'readily achievable'"), with Lugo v. 141 NW 20th Street Holdings, LLC, 878 F. Supp. 2d

7

1291, 1294-95 & n.4 (S.D. Fla. 2012) ("choos[ing] not to follow Hoewischer," because a plaintiff "could not have pre-suit data of the cost of renovating" property or of "Defendant's financial means to renovate").  This Court has held sufficient complaints which claim, without supporting factual allegations, that removal of an allegedly illegal barrier is "readily achievable," *so long as* that claim "is at least plausible" given "the nature of" the alleged barrier.  Marradi, 2016 WL 3976580, at *5; Melo v. S. Broadway Law Realty Trust, 2016 WL 393258, at *2 (D. Mass. 2016) (Saylor, J.).  Thus, in Marradi, Judge Gorton found a claim of ready achievability was plausible, even without supporting factual allegations, "[g]iven the nature of the alleged ADA violations, which range from an inaccessibly steep ramp to improper signage." 2016 WL 3976580, at *5.  Similarly, in Melo, Judge Saylor found a bare claim of ready achievability was plausible "[g]iven the nature of the violations alleged," which included lack of signage for and "faded paint" demarcating accessible parking spaces.  2016 WL 393258, at *2 & n.1.

In this case, unlike in Marradi and Melo, the Court is not able to conclude, without supporting factual allegations, that it is "at least plausible" that removal of *all* 16 alleged barriers on Defendant's property is readily achievable, i.e., is easily accomplishable without much difficulty or expense.  For one thing, certain violations Plaintiff alleges are far larger than the violations discussed in Marradi and Melo.  For example, Plaintiff alleges Defendant's property violates the ADA because, among other things, there "is no elevator" and the "restrooms lack accessible clear floor space, maneuvering clearance and turning space."  Doc. 1 at 5.  The Court, "draw[ing] on its . . . common sense," Iqbal, 556 U.S. at 679, finds that installing an elevator and renovating a bathroom to create more space seem far less readily achievable than remedying insufficient signage, faded paint, or an overly steep ramp.[4]  The Court requires more than the

---

[4] The Court presumes the lack of accessible space in the bathroom is because the bathroom is too small or because fixtures are in the way, not because a poorly placed trashcan or some other easily fixable problem.

Complaint's threadbare recital of the definition of ready achievability before it can conclude that it is actually plausible that such an installation or renovation is readily achievable.

In addition, certain violations that Plaintiff alleges are so vague that the Court does not know what the remedy might be, and thus cannot evaluate, without some supporting factual allegations, whether it is plausible that the remedies are readily achievable. The violations discussed in Marradi and Melo were easy to understand – paint was faded, a ramp was too steep, signage was either wrong or non-existent – such that the defendants had fair notice of what the violations were and the Court was able to decide whether it was plausible that remedying the violations was readily achievable. Here, by contrast, Plaintiff vaguely alleges that: there "is not an accessible route throughout the site and facility"; "[a]t least 5% of the tables (dining/work surfaces) are not compliant"; there "are not accessible stairs"; there "are doors that are inaccessible"; the "front counter is inaccessible"; and the "water closets are inaccessible." Doc. 1 at 5-6. Plaintiff neglects to state *how* these aspects of the restaurant are noncompliant or inaccessible. Without at least some explanation, the Court is "not bound to accept as true" such "legal conclusion[s] couched as . . . factual allegation[s]." Iqbal, 556 U.S. at 678.

Nevertheless, the Complaint does allege *some* specific ADA violations whose remedy is plausibly readily achievable. These violations include: the steps "do not have accessible handrails"; the restroom doors have insufficient "maneuvering clearances"; the "water closets are not located at the appropriate height"; there "are no grab bars at the water closet"; there is a "cabinet beneath the lavatory blocking the knee clearance"[5]; and the "dispensers in the restroom are [out] of reach." Doc. 1 at 5-6. Thus, on the basis of these violations alone, Plaintiff has stated a claim to relief under Title III.

---

[5] The Court assumes, but is not certain, that Plaintiff is referring to a cabinet in, not beneath, the lavatory.

C.     Motion to Dismiss for Failure to Join an Indispensable Party

Defendant argues that this action must be dismissed because Plaintiff has not named My Thai Café, the current tenant of the Premises, as a defendant. Doc. 8 at 11. Defendant states that Plaintiff demands modifications "to tenant property out of control of the landlord K&W," thus requiring Plaintiff to name My Thai Café. Id. at 12.

Defendant is effectively arguing that it is not liable under the ADA because it has leased and does not presently operate the Premises. However, under the plain text of Title III, Defendant is liable for any ADA violations on the Premises because it "owns" and is "leas[ing]" them. 42 U.S.C. § 12182(a). The Ninth Circuit, which is the only federal court of appeals to discuss this issue in depth, has noted that the legislative history behind section 12182(a) "confirms that a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract" with a tenant. Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000) (citations omitted). Indeed, regulations promulgated by the Department of Justice state that although a landlord may allocate to a tenant the responsibility to comply with the ADA, such allocation "is effective only '[a]s between the parties'" and has "no effect on the rights of third parties," such as Plaintiff. Id. (quoting 28 C.F.R. § 36.201(b)). Accordingly, Plaintiff is entitled to sue Defendant under Title III and need not name My Thai Café as a defendant as well.

III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 7) is DENIED. The Clerk shall schedule a Rule 16 Conference with the parties.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge